UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.                                                           Case No. 25-cv-516

DAVID A. NAGLER, and
NEW LINE CAPITAL, LLC,

Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Securities and Exchange Commission ("Plaintiff" or "Commission") alleges the following against Defendants David A. Nagler ("Nagler") and New Line Capital, LLC ("New Line" and, together with Nagler, "Defendants"):

### INTRODUCTION

1.      Nagler and New Line, an entity he founded, owns, and controls, are investment advisers to New Line's clients. As investment advisers, Defendants Nagler and New Line owe fiduciary duties to New Line's investment advisory clients and are obligated to act in the clients' best interests, to employ reasonable care to avoid misleading clients, and to fully disclose all material facts, including any conflicts of interest. During the time period from at least April 5, 2019 through December 2024 (the "Relevant Period"), Defendants charged advisory fees in excess of what they promised to New Line clients and charged certain clients for "consulting"

without their knowledge or consent. In doing so, Defendants breached their fiduciary duties and defrauded New Line clients.

2.      New Line and Nagler defrauded New Line investment advisory clients in connection with two types of fees New Line charged clients: 1) annual advisory fees; and 2) hourly fees for services.

3.      First, Defendants breached their fiduciary duties to New Line clients by making false and misleading statements and by failing to disclose material facts regarding annual advisory fees that New Line charged clients. Defendants misrepresented that they "take care to assure" that New Line's advisory fees are capped at 2% annually when, in fact, Defendants charged numerous clients more than 2% per year and did not make any efforts to prevent over-charging clients. Further, Defendants failed to disclose that Nagler used subjective criteria, such as how "demanding" he found a client, to determine the amount of advisory fees charged, and failed to disclose that New Line may charge clients more than 2%. During the Relevant Period, New Line's clients paid, and New Line and Nagler received, approximately $125,000 in advisory fees beyond the 2% annual limit disclosed to New Line clients.

4.      Second, Defendants breached their fiduciary duties in connection with their practice of billing New Line clients hourly fees for services without notice to clients that they were purportedly providing specific services. Defendants did not disclose to New Line clients that hourly fees may be charged without notice or the material conflicts of interest that resulted from this practice. During the Relevant Period, New Line's clients paid, and New Line and Nagler received, approximately $325,000 in hourly fees.

5.      By their actions, Defendants violated, and unless restrained and enjoined will continue to violate, Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]. The Commission requests that the Court enter permanent injunctions prohibiting Nagler and New Line from further violations of these provisions and enter permanent injunctions prohibiting Nagler and New Line from receiving compensation from an advisory client unless they provide the client a quarterly written invoice itemizing the fees and charges levied on the client. Additionally, the Commission requests that the Court order Nagler and New Line, jointly and severally, to disgorge ill-gotten gains, with prejudgment interest, that they received as a result of the conduct alleged in the Complaint pursuant to Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)] and order Nagler and New Line to each pay civil penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action pursuant to Sections 209(d) and 214(a) of the Advisers Act, 15 U.S.C. §§ 80b-9(d) & 80b-14(a).

7.      Venue is proper in the District of New Mexico under Section 214 of the Advisers Act [15 U.S.C. § 80b-14] because New Line's principal place of business is in Santa Fe, New Mexico, and Nagler resides in this district. In addition, many of the acts and transactions constituting the violations alleged occurred in this district, including Nagler and New Line breaching their fiduciary duties while acting as investment advisers to New Mexico residents.

8.      Defendants have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged in this Complaint. This includes Nagler, acting on behalf of New Line, communicating with New Line clients about advisory services by, among other methods, telephone and email.

9.      Each Defendant entered into four agreements tolling the running of any statute of limitations from April 5, 2024, to June 7, 2025.

## DEFENDANTS

10.     **David A. Nagler**, age 63, is a resident of Sante Fe, New Mexico. Throughout the Relevant Period Nagler was, and currently is, registered with the state of New Mexico as an investment adviser representative. Nagler was also registered with the state of Colorado as an investment adviser representative throughout the Relevant Period and with the state of California from the beginning of the Relevant Period to approximately December 2020. Nagler is the founder, sole owner, sole Managing Member, and Chief Compliance Officer of New Line, as well as an investment adviser representative of New Line.

11.     **New Line Capital, LLC** is a Wyoming limited liability company formed in 2006 with its principal place of business in Sante Fe, New Mexico, which is owned and controlled by Nagler. New Line registered with the Commission as an investment adviser in 2006 and withdrew its registration in August 2014. Throughout the Relevant Period, New Line was, and currently is, registered as an investment adviser with the states of New Mexico, Colorado, and New Jersey. New Line was also registered as an investment adviser with the state of California

from the beginning of the Relevant Period to approximately December 2020 and has been registered with the state of Connecticut from approximately January 2021 to the present. New Line is in the business of providing investment advice concerning securities for compensation, and, as of March 2025, had assets under management of over $29 million.

## FACTS

**I.    Defendants Are Investment Advisers and Owe Fiduciary Duties to New Line Clients.**

**A.    Nagler and New Line Acted as Investment Advisers to New Line Clients.**

12.    Throughout the Relevant Period, Nagler and New Line provided investment advisory services to a variety of New Line clients, including retirees and elderly persons who rely on their New Line advisory accounts for income. These advisory services include both investment advice and management of clients' investment portfolios. New Line provides advisory services through Nagler and two other investment adviser representatives.

13.    In exchange for these advisory services, New Line clients pay advisory fees to New Line, which Nagler receives as the firm's owner.

14.    During the Relevant Period, New Line was an investment adviser within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11). New Line is a state-registered investment adviser that, as stated in its own public disclosures during the Relevant Period, provided "investment advisory services" to individuals and entities about investing in securities for compensation in the form of fees. New Line acted as an investment adviser to its clients.

15.    Nagler, during the Relevant Period, was also an investment adviser within the meaning of Section 202(a)(11) of the Advisers Act, 15 U.S.C. § 80b-2(a)(11), and acted as an investment adviser to New Line's clients. Nagler owned, managed, and controlled New Line, formed advisory relationships with New Line's clients, and provided those clients with securities investment advice and securities investment services in exchange for compensation in the form of fees paid to New Line, which Nagler received as New Line's owner.

**B.    Nagler and New Line Owed the New Line Clients Fiduciary Duties, Which They Acknowledged in Filings and Internal Documents.**

16.    As investment advisers, both Nagler and New Line are fiduciaries for New Line's advisory clients. As fiduciaries to New Line's clients, among other obligations, Nagler and New Line: a) owe New Line's advisory clients an affirmative duty of utmost good faith; b) are obligated to provide full and fair disclosure of all material facts; c) have an affirmative obligation to employ reasonable care to avoid misleading New Line's clients; and d) have a duty to act in New Line's clients' best interests. Defendants' duty to disclose all material facts includes a duty to tell New Line's clients about all of their actual or potential conflicts of interest that might incline Defendants to render investment advice that is not disinterested.

17.    Nagler and New Line acknowledged their fiduciary duties in numerous filings and in New Line's own internal guidance.

18.    As a state-registered investment adviser, New Line is required to file and update, at least annually, a uniform registration application and report referred to as a Form ADV. As part of the Form ADV, New Line is required to create and file, on an annual basis, a Form ADV Part

2A, commonly referred to as a brochure ("Brochure"), containing certain disclosures about its advisory business.

19.    Nagler and New Line acknowledged their fiduciary duties in each of the Brochures New Line filed during the Relevant Period. In the Brochures, Defendants disclosed to New Line's clients that "[w]e have a duty to you to exercise our authority and responsibility for your benefit, to place your interests first, and to refrain from having outside interests that conflict with your interests" and "[w]e must avoid any circumstances that might adversely affect or appear to affect our duty of complete loyalty to you."

20.    Nagler signed each New Line Form ADV in effect from January 2019 through the time of the filing of this Complaint and certified under penalty of perjury that the information and statements made in each Form ADV, including exhibits and other information submitted, which includes the Brochures, were true and correct and did not omit required information.

21.    Nagler and New Line also consistently acknowledged their fiduciary obligations to New Line's advisory clients in New Line's Investment Adviser Compliance and Supervisory Procedures Manual ("Compliance Manual"), which was in effect during the Relevant Period. The Compliance Manual confirms that:

> NLC [New Line Capital] and any supervised persons are prohibited from engaging in fraudulent, deceptive, or manipulative conduct. Compliance with this section involves more than acting with honesty and good faith alone. It means that NLC and its supervised persons have an affirmative duty of utmost good faith to act solely in the best interests of its clients.

22.     The Compliance Manual further provides: "NLC and its supervised persons must provide advice that is in the client's best interest [and] must not place their interests ahead of the client's interests under any circumstances."

23.     The Compliance Manual further states that: "Both the [Brochure] and NLC's [Advisory Agreement] must include language in which NLC details all material facts regarding NLC, the advisory services rendered, compensation and conflicts of interest."

24.     Additionally, the Compliance Manual provides: "Generally, NLC must disclose any potential or actual conflicts of interest when dealing with clients."

25.     According to the Compliance Manual, it was Nagler's responsibility, as New Line's Chief Compliance Officer, "to ensure that all clients are provided with [New Line's Brochure and Advisory Agreement] and that they contain the proper disclosure language."

## II.     **Defendants' Billing Practices Violated Their Fiduciary Duties in Multiple Ways.**

### A.   **Defendants Misled New Line Advisory Clients Regarding, and Failed to Disclose Adequately, New Line's Advisory Fees.**

26.     As fiduciaries, Defendants are obligated to provide full and fair disclosure of all material facts and have an affirmative obligation to employ reasonable care to avoid misleading New Line's clients. In violation of these fiduciary duties, Nagler and New Line a) made false and misleading statements about New Line's advisory fee billing practices, and b) failed to disclose all material facts regarding those practices. As a result, Defendants breached their fiduciary duties to New Line's clients.

_Disclosures in the Brochure Regarding Advisory Fees Misled New Line Advisory Clients._

27.    During the Relevant Period, each advisory client entered into an investment advisory agreement ("Advisory Agreement") with New Line, signed by Nagler as New Line's manager. The Advisory Agreements provide that New Line is entitled to an annual fee for services rendered, paid quarterly in advance, based on the value of the client's assets under management ("Advisory Fees").

28.    An "Investment Advisory Fee Schedule (Schedule B)" was appended to each Advisory Agreement. Schedule B includes a table with the following percentage-based fees:

| Financial Assets Under Management | Client's Annual Management Fee |
|---|---|
| Up to $500,000 | 1.50% |
| $500,001 up to $1,000,000 | 1.25% |
| Over $1,000,000 | 1.00% |

Schedule B further provides: "Client acknowledges that it is understood and agreed that the account is subject to a minimum annual fee of $10,000[.]"

29.    During the Relevant Period, Nagler and New Line prepared, made available to New Line advisory clients, and filed Forms ADV that included Brochures—including, at least, Brochures dated March 2019, March 2020, March 2021, March 2022, and March 2023—that reiterated the fee schedule reflected in Schedule B of the Advisory Agreement.

30.    The Brochures contain the following disclosure:

> Fees quoted are annual and charged quarterly in advance, although with
> the client and the adviser's consent, fees may be charged in arrears. We
> also typically charge a minimum annual fee of $10,000, though this

minimum may also be negotiable at our discretion. At inception, an initial partial calendar quarter and the next full calendar quarter fees may be charged. After the first full quarter's fees are paid, subsequent quarterly fees may reflect a proportional amount of the $10,000 minimum annual fee. ***Regarding our minimum fee, we take care to assure that our standard advisory fee does not compute to be greater than 2% per annum.***

(Emphasis added.)

31.     A reasonable advisory client would have understood from the statement above (the "Advisory Fee Cap Statement") that, regardless of the value of the client's assets under management and the $10,000 minimum annual fee disclosed in the Advisory Agreement and Brochures, the Advisory Fees New Line charged the client each year would be no more than 2% of the value of the client's assets under management by New Line (the "Advisory Fee Cap") and that New Line would make efforts to prevent charging more than that amount. For example, if the value of the client's assets under management by New Line was $100,000, so that charging the $10,000 minimum annual fee would be 10% per year, Defendants would charge no more than 2% of the client's assets under management, which would be no more than $2,000.

32.     The Advisory Fee Cap Statement was false and misleading. From at least April 5, 2019 through February 2024, contrary to the Advisory Fee Cap Statement, New Line, acting through Nagler, disregarded the Advisory Fee Cap and charged certain clients Advisory Fees in excess of 2% per year. In addition, contrary to the Advisory Fee Cap Statement, Nagler and New Line did not make efforts to prevent charging clients Advisory Fees totaling more than 2% per year. During the Relevant Period, Nagler and New Line did not maintain an internal database, spreadsheets, or other internal electronic records to track the percentage of Advisory Fees New

Line charged clients on a yearly basis and did not undertake to assess whether the Advisory Fees they charged New Line clients exceeded 2% per year.

33.    During the Relevant Period, New Line charged clients approximately $125,000 in Advisory Fees in excess of the Advisory Fee Cap disclosed in the Advisory Fee Cap Statement.

34.    Nagler, as owner, Managing Member, and Chief Compliance Officer of New Line, was solely responsible for determining the amounts of Advisory Fees charged to New Line clients.

35.    Throughout the Relevant Period, Nagler was also primarily responsible for supplying the information provided to New Line clients regarding the amount of fees charged to their accounts. Nagler and New Line did not issue invoices to clients for Advisory Fees during the Relevant Period. The broker that New Line used to provide trade execution and clearing services for its clients ("Custodial Broker") prepared monthly statements for New Line's advisory clients ("Monthly Broker Statements") that include a "Fees" section that specified the date, description, and total amount of the fees charged by New Line during the month. For New Line's clients, the description in the Monthly Broker Statements generally stated: "FA Fee: Manual." Nagler manually input in the Custodial Broker's online portal an aggregate fee amount that did not itemize or otherwise distinguish between the types of fees Defendants charged. As a result, the Monthly Broker Statements did not disclose the amount of Advisory Fees, as opposed to any other fees, New Line clients were charged in a given month.

*Defendants Failed to Disclose All Material Facts Regarding the Advisory Fees.*

36.    New Line's disclosures regarding advisory fees were insufficient, did not provide all material facts regarding advisory fees, and failed to provide clients full and fair disclosure of all material facts necessary to make an informed decision with respect to their investment with New Line. As a result, Nagler and New Line breached their fiduciary duties to New Line clients.

37.    Throughout the Relevant Period, Nagler determined the amount of Advisory Fees for many New Line clients by applying subjective factors, including how "demanding" a client had been during the applicable period, rather than limiting the amount of Advisory Fees charged to the Advisory Fee Cap.

38.    Nagler and New Line failed to disclose to New Line clients that they may use subjective factors to determine the amount of Advisory Fees charged to their accounts. Additionally, Nagler and New Line failed to disclose that, contrary to the Advisory Fee Cap Statement, advisory clients may be charged more than 2% of the funds being managed by Nagler and New Line.

39.    These disclosure failures were omissions of material fact that Nagler and New Line had a fiduciary duty to disclose to New Line advisory clients.

*In Breaching These Fiduciary Duties, Defendants Acted with Scienter and Were Negligent; the False and Misleading Advisory Fee Cap Statement and the Undisclosed Facts Regarding the Advisory Fees Were Material.*

40.    Nagler knew or was reckless in not knowing, and should have known, that the Advisory Fee Cap Statement was false and misleading. Nagler was solely responsible for determining the amount of Advisory Fees charged to New Line client accounts and therefore

knew or was reckless in not knowing, and should have known, the amount of Advisory Fees charged to New Line client accounts, including fees greater than the Advisory Fee Cap, and that he and New Line did not make efforts to comply with the Advisory Fee Cap. Further, Nagler knew that he manually entered monthly fees into the Custodial Broker's online portal in the manner described above and that he and New Line did not provide monthly statements or any other documents to advisory clients that fully and fairly disclosed the amount of Advisory Fees that New Line actually charged to client accounts or that New Line was charging fees in excess of the Advisory Fee Cap.

41.     Nagler knew or was reckless in not knowing, and should have known, that he and New Line failed to disclose to clients that Nagler used subjective factors in determining the amount of fees charged to client accounts or that New Line may charge Advisory Fees of more than 2% per year.

42.     Defendants' false and misleading statements and omissions were material to advisory clients because, among other things, a reasonable advisory client would consider the maximum annual percentage fee to be charged to their account and any subjective or discretionary factors used to calculate their fees when deciding whether to use the investment advisory services of Defendants. Nagler knew or was reckless in not knowing, and should have known, that these false and misleading statements and omissions were material.

43.     Nagler knew or was reckless in not knowing that he and New Line have a duty not to make false or misleading disclosures and are obligated to provide full and fair disclosure of all material facts and employ reasonable care to avoid misleading New Line's clients.

44.     In making these false and misleading disclosures and failing to provide full and fair disclosure of all material facts, Nagler was also negligent. Nagler failed to use ordinary care under the circumstances by failing to exercise the care that a reasonable investment adviser would use in making disclosures to their clients.

45.     Nagler engaged in this conduct while acting as the sole owner, Managing Member, and Chief Compliance Officer of New Line and his conduct, knowledge, recklessness, and negligence may be imputed to New Line.

**B.     Defendants Failed to Disclose Adequately Hourly Fees and the Resulting Material Conflicts of Interest.**

46.     As fiduciaries, Defendants are obligated to provide full and fair disclosure of all material facts and have an affirmative obligation to employ reasonable care to avoid misleading New Line's clients. Defendants' duties to disclose all material facts include duties to tell New Line's clients about all of their actual or potential conflicts of interest that might incline Defendants to render investment advice that is not disinterested. In violation of these duties, Nagler and New Line a) failed to provide all material facts regarding consulting service fees New Line charged clients on an hourly basis ("Hourly Fees"), and b) failed to provide all material facts regarding the potential and actual material conflicts of interest associated with Defendants' receipt of additional compensation for these services. As a result, Defendants breached their fiduciary duties to New Line's clients.

*Defendants Failed to Disclose All Material Facts Regarding the Hourly Fees.*

47.    During the Relevant Period, New Line's disclosures regarding Hourly Fees were insufficient, did not provide all material facts regarding the Hourly Fees, and failed to provide clients with the necessary information to make an informed decision with respect to their investment with New Line. As a result, Nagler and New Line breached their fiduciary duties to New Line's clients.

48.    Throughout the Relevant Period, the New Line Brochures incorporated in its Forms ADV—including, at least, Brochures dated March 2019, March 2020, March 2021, March 2022, March 2023, March 2024, and March 2025—included the following disclosure:

> Services may be offered in connection with advising you on matters not involving your managed assets or securities. This is not a Financial Planning service. The charge for this consultation is $250 per hour plus expenses, if any, with a minimum retainer of six hours per quarter. There are no Financial Planning agreements. Any consulting service fees are in addition to any Investment Advisory Management fees.

49.    New Line's March 2019 and March 2020 Brochures included the following additional language pertaining to Hourly Fees:

> If an advisory client of New Line Capital, LLC wishes to make use of the consulting services of the firm, a specific agreement outlining the hourly fee and any additional expenses is attached to the client Agreement Package as Exhibit B-3.
>
> Any consulting service fees are in addition to any Investment Advisory Management fees.

50.    New Line's Advisory Agreements do not reference Hourly Fees and do not append separate client agreements related to Hourly Fees or consulting services.

51.    Neither the Advisory Agreements nor any other agreement signed by New Line's clients authorize New Line to deduct Hourly Fees from New Line's clients' accounts.

52.    A reasonable advisory client would understand from the disclosures in the Brochures that New Line clients would not be charged Hourly Fees unless the clients accepted an offer from Defendants to provide a specific service in exchange for Hourly Fees.

53.    In fact, throughout the Relevant Period, Nagler and New Line billed numerous clients Hourly Fees without disclosing that they were offering specific services for additional Hourly Fees and without seeking or acquiring the clients' agreement to the fees for those specific services. Multiple New Line clients who were charged Hourly Fees did not know that Nagler and New Line had ever charged Hourly Fees and, upon learning of the charges, were surprised that they had been billed such fees. Nagler recorded the Hourly Fees he charged clients in handwritten notes that typically included the hours charged and a cursory description of the services purportedly rendered. Several clients were unaware that Nagler had ever performed any work related to the subjects his notes indicate they were billed for. To the extent clients had a conversation with Nagler about a topic reflected in his notes or knew that Nagler had performed a given task, multiple clients understood that he was doing so either as part of New Line's investment advisory services or in his capacity as a personal friend or acquaintance. Moreover, multiple clients were surprised by the amount of time Nagler indicated in his notes that he spent on particular tasks.

54.    From April 2019 through December 2024, New Line charged dozens of clients Hourly Fees totaling approximately $325,000, which were deducted from New Line client accounts.

55.    Nagler was solely responsible for providing services on behalf of New Line for which New Line billed Hourly Fees and for determining the amounts of Hourly Fees New Line charged to clients.

56.    After Nagler purportedly provided services subject to Hourly Fees, Nagler and New Line did not fully and fairly disclose to clients that Hourly Fees had been charged to their accounts. Nagler and New Line did not issue invoices to clients for Hourly Fees during the Relevant Period. Nagler manually entered client fee amounts into the Custodial Broker's online portal in a manner that combined Advisory Fees and any Hourly Fees. Accordingly, a client reviewing a Monthly Broker Statement could not determine whether the listed fee amount consisted of an Advisory Fee, an Hourly Fee, or a combination of the two.

57.    Throughout the Relevant Period, Nagler and New Line failed to disclose to clients that Hourly Fees may be charged without notice. By omitting that fact, as well as failing to fully and fairly disclose to clients that Hourly Fees had been charged to their accounts, Defendants did not provide sufficient information from which clients could understand that they were being charged Hourly Fees.

58.    The omitted information about Hourly Fees was material to advisory clients because, among other reasons, a reasonable advisory client would want to know that they might incur Hourly Fees without notice when deciding whether to use the investment advisory services

of Defendants and that Hourly Fees were being charged for a specific service before incurring those fees. Nagler knew or was reckless in not knowing, and should have known, that the omitted information about Hourly Fees was material.

59.    Nagler knew or was reckless in not knowing that he and New Line did not disclose these material facts to New Line clients and that he and New Line have a duty to provide full and fair disclosure of all material facts and employ reasonable care to avoid misleading New Line's clients.

60.    In failing to disclose these material facts, Nagler was also negligent. Nagler failed to use ordinary care under the circumstances by failing to exercise the care that a reasonable investment adviser would use in making disclosures to their clients.

61.    Nagler engaged in this conduct while acting as the sole owner, Managing Member, and Chief Compliance Officer of New Line, and his conduct, knowledge, recklessness, and negligence may be imputed to New Line.

*Defendants Failed to Disclose All Material Facts Regarding Conflicts of Interest Resulting from the Hourly Fees.*

62.    During the Relevant Period, New Line's disclosures regarding Hourly Fees also did not provide all material facts regarding the conflicts of interest resulting from the Hourly Fee practices. As a result, Nagler and New Line breached their fiduciary duties to New Line clients.

63.    As fiduciaries, Defendants were obligated to provide full and fair disclosure of all material facts including any actual or potential conflicts of interest. To meet this obligation, Defendants were required to provide New Line advisory clients with sufficient facts so that the

clients could understand the actual or potential conflicts of interests and thus have a basis on which to give informed consent to such conflicts or reject them.

64.     Defendants' Hourly Fee practices described above, including Defendants' practice of charging Hourly Fees on a discretionary basis without specific notice to affected clients, created material conflicts of interest between Defendants and New Line clients. As a result of Defendants' Hourly Fee practices, their financial interests conflicted with those of New Line's clients. Nagler had a financial interest in deciding whether to provide services that incurred Hourly Fees and an incentive to maximize Hourly Fees charged to advisory clients in order to increase the fees received. By contrast, each client had an interest in minimizing fees and in being informed of Nagler's intent to charge an Hourly Fee for particular services so that the client could consent to or reject the services and the associated Hourly Fee.

65.     Throughout the Relevant Period, Defendants failed to advise New Line clients that Hourly Fees would be charged without notice and that there was a conflict of interest as a result of the Hourly Fees. Because of Nagler's practice of submitting aggregate fee amounts through the Custodial Broker's online portal, the Monthly Broker Statements provided to New Line clients did not disclose or itemize Hourly Fees. As a result, even after Defendants charged Hourly Fees, Defendants did not provide clients sufficient facts to understand the conflicts of interest.

66.     The undisclosed conflicts of interest arising from Defendants' Hourly Fee practices were material because, among other things, a reasonable advisory client would want to be informed of the conflicts of interest and have an opportunity to give informed consent to the

conflicts or reject them and would consider the conflicts of interest when deciding whether to engage (or continue to engage) the investment advisory services of Defendants. Nagler knew or was reckless in not knowing, and should have known, that these conflicts of interest were material.

67.     Nagler knew or was reckless in not knowing that he and New Line did not disclose these material conflicts of interest to New Line clients and that he and New Line have fiduciary duties to New Line clients that include an obligation to make full and fair disclosure of any material conflicts of interest and sufficient facts to enable clients to understand the conflicts of interest and make an informed decision to consent to the conflicts or reject them.

68.     In failing to disclose these material conflicts of interest, Nagler was also negligent. Nagler failed to use ordinary care under the circumstances by failing to exercise the care that a reasonable investment adviser would use in making disclosures to their clients.

69.     Nagler engaged in this conduct while acting as the sole owner, Managing Member, and Chief Compliance Officer of New Line, and his conduct, knowledge, recklessness, and negligence may be imputed to New Line.

## FIRST CLAIM FOR RELIEF
### Violations of Section 206(1) of the Advisers Act
### (Nagler and New Line)

70.     The Commission realleges and incorporates by reference paragraphs 1 through 69 as though fully set forth herein.

71.     Nagler and New Line are "investment advisers" as defined by Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

72.     Nagler and New Line, and each of them, while acting as investment advisers, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce, employed one or more devices, schemes, or artifices to defraud clients or prospective clients.

73.     By reason of the foregoing, Nagler and New Line violated and, unless enjoined, will again violate Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 206(2) of the Advisers Act
### (Nagler and New Line)

74.     The Commission realleges and incorporates by reference paragraphs 1 through 69 as though fully set forth herein.

75.     Nagler and New Line are "investment advisers" as defined by Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

76.     Nagler and New Line, and each of them, while acting as investment advisers, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce engaged in one or more transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients.

77.     By reason of the foregoing, Nagler and New Line violated and, unless enjoined, will again violate Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

## REQUEST FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A.     Find that Nagler and New Line each committed the violations alleged in this Complaint;

B.      Enter injunctions, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Nagler and New Line from violating, directly or indirectly, Sections 206(1) [15 U.S.C. § 80b-6(1)] and 206(2) [15 U.S.C. § 80b-6(2)] of the Advisers Act;

C.      Enter injunctions, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, enjoining Nagler and New Line from receiving compensation from an advisory client unless they provide the client a quarterly written invoice itemizing the fees and charges levied on the client;

D.      Order Defendants, jointly and severally, to disgorge all ill-gotten gains received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

E.      Order Defendants to pay civil penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-6(9)(e)]; and

F.      Grant such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The Commission demands a trial by jury on all claims so triable.


Dated: June 2, 2025

By:    /s/ *Zachary T. Carlyle*____
Zachary T. Carlyle
Rachel E. Yeates
**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES SECURITIES AND**
**EXCHANGE COMMISSION**
1961 Stout St., 17th Floor
Denver, Colorado 80294
Telephone:    303.844.1084 (Carlyle)
              303.844.1060 (Yeates)
Email:        carlylez@sec.gov
              yeatesr@sec.gov